IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROBERT HEATH, | ) |
| | ) |
| Plaintiff, | ) |
| | )   No.  CV-05-548-HU |
| v. | ) |
| | ) |
| JOANNE B. BARNHART, | ) |
| Commissioner of Social | ) |
| Security, | )   OPINION & ORDER |
| | ) |
| Defendant. | ) |

R. Adian Martin
RANSOM, GILBERTSON, MARTIN & RATLIFF, L.L.P
The Loyalty Building
317 S.W. Alder Street, 9th Floor
Portland, Oregon 97204

    Attorney for Plaintiff

Karin J. Immergut
UNITED STATES ATTORNEY
District of Oregon
Neil J. Evans
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2904

/ / /

/ / /

/ / /

1 - OPINION & ORDER

Richard A. Morris
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorney for Defendant

HUBEL, Magistrate Judge:

    Plaintiff Robert Heath brings this action for judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Both parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

    For the reasons set forth below, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## PROCEDURAL HISTORY

    Plaintiff applied for DIB and SSI on February 4, 1999. Tr. 6[1], 23, 66-69. His applications were denied initially and on reconsideration. Tr. 6, 54, 60.

    On November 13, 2000, plaintiff, represented by counsel, appeared for a hearing before an Administrative Law Judge (ALJ). Tr. 673-98. In a May 23, 2001 decision, the ALJ found plaintiff not disabled. Tr. 593-600. On appeal, the Appeals Council

---

[1] The List of Exhibits at the beginning of the Administrative Record lists several documents related to plaintiff's SSI application, including the initial application, initial disability determination, and a reconsideration determination. Tr. 6. A handwritten note states that "SSi [sic] Document [sic] are not Available for Inclusion." Id. Since these are documents over which there is no dispute, I do not concern myself with their absence.

2 - OPINION & ORDER

determined that the ALJ had failed to properly assess the weight given to various medical reports and failed to provide an adequate rationale for concluding that there were no work-related limitations. Tr. 628-30. The Appeals Council concluded that the ALJ's finding that plaintiff had no severe impairment, was not supported by the current evidence of the record. Id. The Appeals Council remanded the case back to the ALJ.

A different ALJ conducted a second hearing on August 6, 2002. Tr. 699-741. Plaintiff was again represented by counsel. Id. On November 7, 2002, the ALJ issued a decision finding plaintiff not disabled. Tr. 635-46.

On July 11, 2003, the Appeals Council remanded the case back to the ALJ for three purposes: (1) to obtain additional evidence regarding plaintiff's musculoskeletal conditions[2]; the additional evidence could include, if warranted and available, a consultative orthopedic examination and medical source statements about what plaintiff can still do despite his impairments; (2) to obtain evidence from a medical expert, if necessary, to clarify the nature and severity of the plaintiff's impairment; and (3) to obtain supplemental evidence from a vocational expert to clarify past relevant work and to determine whether the claimant had acquired any skills that are transferable to other occupations under the

---

[2] This was prompted by the Appeals Council's observation that new evidence indicated that the plaintiff fractured his right hip after the second ALJ hearing, possibly due to an osteoporosis condition. Tr. 651. The Appeals Council noted that while the undisplaced fracture was expected to heal, it was unclear whether the new condition would interfere with plaintiff's ability to perform medium work, as found in the ALJ's decision. Id.

3 - OPINION & ORDER

guidelines in Social Security Ruling 82-41. Id.

Plaintiff appeared before an ALJ[3] for the third time, again with counsel, on April 22, 2004. Tr. 742-65. On August 24, 2004, the ALJ issued a decision finding plaintiff disabled beginning April 10, 2003, and continuing, but not disabled before that date. Tr. 18-40. The Appeals Council denied plaintiff's request for review of the ALJ's decision. Tr. 8-10.

## FACTUAL BACKGROUND

Plaintiff alleges disability, commencing September 30, 1989, based on post-traumatic stress disorder (PTSD), back pain, gout, and heart problems. Tr. 75. At the time of the third hearing, on April 22, 2004, plaintiff was fifty-four years old. Tr. 67. He is a high school graduate. Tr. 678. His past relevant work is as an auction yardman, tree planter, construction millwright, automobile technician, and forklift operator. Tr. 37, 97, 758-69.

As explained below, plaintiff seeks to remand this case to the ALJ for failure to comply with the Appeals Council's July 11, 2003 directives, and for failure to accurately infer the onset date of plaintiff's disability, as defined in the Social Security Act. Given the fairly narrow issues raised by plaintiff, I will address the relevant factual evidence in conjunction with a discussion of plaintiff's arguments.

## THE ALJ'S AUGUST 24, 2004 DECISION

The ALJ first determined that plaintiff had not engaged in any substantial work activity since his alleged September 30, 1989

---

[3] The ALJ who conducted this third hearing was the same one who conducted the first hearing.

4 - OPINION & ORDER

onset date. Tr. 25, 38. The ALJ found that plaintiff had severe impairments of PTSD, peripheral neuropathy, diabetes mellitus, and degenerative disk disease. Tr. 31, 39. However, he found that none of plaintiff's impairments, or combination of impairments, met or equaled a listed impairment. Id.

Next, the ALJ determined plaintiff's residual functional capacity. The ALJ concluded that as of April 10, 2003, plaintiff was limited to sedentary work due to difficulty with walking and standing. Tr. 36, 39. Prior to that date, however, the ALJ concluded that plaintiff retained the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently, to sit for six hours in an eight-hour workday, and to stand and/or walk for six hours in an eight-hour workday, with no limitations related to pushing and pulling with his lower or upper extremities. Tr. 37, 39. In addition, plaintiff was limited to simple, routine, repetitive work that did not require more than occasional interaction with coworkers or the public. Id.

The ALJ, relying on the testimony of a vocational expert (VE), then determined that plaintiff was capable of performing his past relevant work as a forklift operator and janitor prior to April 10, 2003. Id. After that date, however, because of the limitation to sedentary work, the ALJ determined that plaintiff was unable to perform his past relevant work. Id. When plaintiff's age, education, and work experience were examined in combination with his residual functional capacity, the ALJ found that Medical-Vocational Rule 201.14 ("the grids"), directed a conclusion of disability. Tr.39-40.

/ / /

5 - OPINION & ORDER

STANDARD OF REVIEW & SEQUENTIAL EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991). The claimant bears the burden of proving disability. Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Commissioner.

6 - OPINION & ORDER

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

The court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Baxter, 923 F.2d at 1394. Substantial evidence means "more than a mere scintilla," but "less than a preponderance." Id. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.

## DISCUSSION

Plaintiff seeks to remand this case to the ALJ for alleged errors by the ALJ in not complying with the July 11, 2003 remand order from the Appeals Council, and in failing to properly assess his disability onset date. Plaintiff states that his disability is based on a combination of multiple physical and mental impairments and that his disability began on September 30, 1989, or some alternative date prior to April 10, 2003.

In regard to the July 11, 2003 Appeals Council remand order, plaintiff's specific argument is that the ALJ did not comply with the Council's directive regarding plaintiff's musculoskeletal condition. Tr. 651-52. As noted above, in its July 11, 2003 Order, the Appeals Council remarked that after the August 2002 hearing before the ALJ, plaintiff suffered a right hip fracture, possibly due to an osteoporosis condition. Id. Thus, it ordered

7 - OPINION & ORDER

the ALJ, upon remand, to "[o]btain additional evidence concerning the claimant's musculoskeletal conditions" in order to "clarify the work restrictions associated with the musculoskeletal conditions." Id.  It noted that the "additional evidence *may* include, if warranted and available, a consultative orthopedic examination and medical source statements about what the claimant can still do despite the impairments." Id. (emphasis added).

Plaintiff contends that the ALJ ignored the Appeals Council's order to investigate his musculoskeletal condition and thus, he violated his duty to fully and fairly develop the record.

In response, defendant contends that additional evidence was supplied by plaintiff's attorney, in three submissions prior to the third ALJ hearing, labeled Exhibits 16F, 17F, and 18F and found in the Administrative Record at Tr. 488-567, 568-80, and 581-92, respectively.  Defendant states that the ALJ reviewed these records in his decision, and particularly addressed the right-side hip pain and fracture.  Defendant states that the ALJ noted that the record as a whole indicated that plaintiff remained active, was able to stand or walk during much of the day, that his hip fracture healed without complication, and that there was progressive improvement in pain and ambulation.

Defendant argues that there are no other medical records to be obtained since plaintiff himself provided the most recent Veterans' Administration (VA)[4] records and identified no others.  Defendant further argues that while the Appeals Council suggested that a

---

[4] Almost all of plaintiff's medical treatment has been provided by the VA.

8 - OPINION & ORDER

consultative examination might be appropriate, such an examination would have provided a report of plaintiff's condition only as of the time of the examination. Because the ALJ found plaintiff disabled beginning April 10, 2003, which was before the Appeals Council's July 11, 2003 Order, it was not error to forgo another examination because a later examination would have served no useful purpose.

I agree with defendant. In his decision, the ALJ discussed the medical records submitted by plaintiff following the previous hearing in August 2002, and which cover plaintiff's medical treatment following his September 2002 hip fracture. Tr. 488-567 (VA medical records from October 23, 2002, to August 22, 2003); Tr. 568-580 (VA medical records from October 15, 2003); Tr. 581-92 (VA medical records from July 22, 2003).

The ALJ first discussed plaintiff's hip fracture as follows:

> In October 2002, the claimant reported severe right-sided hip pain with an acute onset in August 2002. He reported no history of trauma or falls. An MRI showed a non-displaced intertrochanteric fracture of the right femur. (Exhibit 16F/79). The claimant agreed to non-weight bearing and to remain on crutches to prevent displacement of the fracture. (Exhibit 16F/74-75). The claimant underwent a number of tests to determine the cause of the fracture, which were all normal. However, an EMG in January 2003 showed moderate to severe peripheral neuropathy. (Exhibit 16F/72). By late January 2003, the claimant was doing well, with no significant or ongoing hip pain. He began weight bearing and refused physical therapy. (Exhibit 16F/71-73).

Tr. 29.

The ALJ then noted that in February 2003, during a hospitalization related to chest pain, plaintiff reported that his hip pain had resolved. Id. The ALJ then noted that later in February 2003, plaintiff was referred to endocrinology for

9 - OPINION & ORDER

evaluation of osteoporosis.  Id. (citing Exh. 16F/34, 27, 5).  As the ALJ explained, plaintiff was thought to be at high risk for osteoporosis, but he was started on treatment with Alendronate[5], which he tolerated well.  Id.  The ALJ noted that the medical records indicated that plaintiff reported his hip pain at that time as "2/10" and he walked two to three blocks, three or four times per day.  Id. (citing Exh. 1 6F/34).

Finally, in assessing plaintiff's residual functional capacity, the ALJ expressly noted that "it appears that the claimant's hip fracture in August 2002 healed without complication, and he was able to ambulate without crutches by January 2002 and reported resolved pain in February 2003."  Tr. 36 (citing Exh. 16F/53).

The record shows that the ALJ examined the subsequent medical evidence and thus, complied with the Appeals Council's order that additional evidence regarding the osteoporosis condition be obtained and reviewed.  The record shows that the ALJ noted the relevant facts regarding plaintiff's hip, including the level of pain, the new prescription which he tolerated well, and his level of activity in regard to walking.  Thus, the ALJ analyzed the relevant evidence and assessed the impact of the condition on plaintiff's ability to work.  Moreover, as defendant notes, a consultative examination, which was suggested by the Appeals Council as only a possibility, would have provided an evaluation of

---

[5] Alendronate is used to treat osteoporosis by preventing bone breakdown and increasing bone density to make bones stronger and less likely to break.  http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601011.html

10 - OPINION & ORDER

plaintiff as of a specific date in time, a time which fell after the April 10, 2003 date the ALJ determined as the disability onset date. Thus, even had the ALJ been obligated to obtain a consultative examination from an orthopedic specialist, his failure to do so was harmless because any information provided by the specialist would be relevant only to the period in which the ALJ had concluded plaintiff was disabled.

Next, plaintiff argues that the ALJ erred in determining that plaintiff became disabled as of April 10, 2003. I agree.

The ALJ noted plaintiff's assertion that his disability began in September 1989. Tr. 33. The ALJ remarked that there was very little objective medical evidence in the record of an ongoing medically determinable physical impairment or impairments that resulted in significant vocationally relevant limitations prior to the date plaintiff was last insured for DIB, December 31, 1995. Id. The ALJ also remarked that it did not appear that the plaintiff was diagnosed with PTSD until early 1996. Id.

The ALJ noted that plaintiff underwent numerous evaluations over the years related to his disability claim with the VA. Id. However, the ALJ explained, "those evaluations do not support the claimant's assertion of disability until the [VA] found the claimant 100% disabl[ed] as of April 10, 2003, based on evaluations performed in July 2003." Id. The ALJ noted that at that time, in addition to PTSD, plaintiff's physical impairments had worsened and there was evidence of peripheral neuropathy of his hands, as well

11 - OPINION & ORDER

as his feet. <u>Id.</u> Also, the ALJ stated, claudication[6] was found. <u>Id.</u>

The ALJ then explained:

> Dr. Acevedo opined that the claimant's physical impairments, including and particularly claudication, limited him to sedentary work that did not require good finger sensation. Dr. Holm opined that due to mental impairments, the claimant could not perform work requiring interactions with others. Although the undersigned has considered and accepts the Veterans Administration's conclusion of disability as of April 10, 2003, the longitudinal record and the objective medical evidence of record do not support the claimant's assertion of disability prior to such date.

<u>Id.</u>

The problem with the ALJ's reliance on the April 10, 2003 date is that the date is tied to an application plaintiff made to the VA for an increase in his VA disability rating, based on, presumably, plaintiff's belief that his symptoms, obviously occurring before the application date, justified the increase. As plaintiff notes in his memorandum, there is nothing physically or emotionally that occurred to plaintiff on that date and thus, the date is arbitrary and not tied to the relevant evidence in the record. I agree with plaintiff.

Plaintiff's VA disability ratings have increased over time. <u>E.g.</u>, Tr. 256 (Nov. 1996 request for review of an April 22, 1996 examination refers to no rated disabilities as of time of request);

---

[6] Claudication is a reference to limping occurring from leg cramps caused by poor circulation and blockage of blood in leg arteries which produces an aching, tired, and sometimes burning pain the legs. The pain is brought on by exercise and relieved by rest. Symptoms often get worse over time. It can be caused by atherosclerosis (which in turn can occur for many reasons, including diabetes), or peripheral vascular disease. http://www.nlm.nih.gov/medlineplus/ency/article/003184.htm

351 (Jan. 13, 1997 award of 10% disability for PTSD effective March 11, 1996, date of original disability claim); 348 (March 5, 1998 increase in PTSD disability award from 10% to 30%, effective August 12, 1997, date claim for increase received); 343 (July 22, 1999 decision continuing the PTSD disability rating at 30%); Tr. 485-88 (Mar. 25, 2003 rating decision awarding 20% disability for diabetes associated with herbicide exposure, effective May 8, 2001; awarding 20% disability for left lower extremity peripheral neuropathy, effective May 8, 2001; and awarding 20% disability for right lower extremity peripheral neuropathy, effective May 8, 2001); Tr. 574-80 (October 3, 2003 rating decision awarding 30% disability for left upper extremity peripheral neuropathy, effective Apr. 10, 2003; awarding 30% disability for right upper extremity peripheral neuropathy effective Apr. 10, 2003; increasing disability rating for left lower extremity peripheral neuropathy from 20% disabling to 40% disabling, effective Apr. 10, 2003; increasing disability rating for right lower extremity peripheral neuropathy from 20% disabling to 40% disabling, effective Apr. 10, 2003; and maintaining PTSD disability rating at 50%[7]).

The VA records reveal that typically, when a request for a rating increase is sought, the VA undertakes a review of medical records, may obtain additional medical evaluations and consultations, and then issues a decision. Notably, when the

---

[7] The record does not appear to contain the actual decision increasing the PTSD rating from 30% to 50% but clearly, if the October 3, 2003 rating decision refers to maintaining the 50% rating, the rating increased to 50% sometime between March 1998, when the 30% was initially awarded (and which was effective as of August 1997), and October 2003.

13 - OPINION & ORDER

rating is increased, the increase is made effective as of the date the claimant applied for the increase.

As the ALJ noted in his decision, on April 10, 2003, plaintiff filed a claim with the VA for increased benefits. Tr. 30. The decision on that claim was issued in October 2003, but was effective as of the date the claim was filed. Tr. 31, 574-80. The ALJ further noted that the VA's impairment rating did not indicate that plaintiff's physical impairments had limited him to sedentary work until April 2003. Tr. 36. The ALJ then concluded that, "giving consideration to the conclusions of the Veterans Administration, the undersigned concludes that the claimant was limited to sedentary work as of April 10, 2003 due to difficulty with walking and/or standing." Id. "However, prior to that time, the record as a whole indicates that the claimant remained active and was able to stand and/or walk during much of the day." Id.

The problem with the ALJ's reliance on the VA's impairment rating decision is that the VA's effective date is based entirely on the date plaintiff submitted his claim for a rate increase. The date has no direct correlation to the underlying medical evidence. Clearly, the VA determined that medical evidence supported the rate increase as of that date. However, it is not determinative of whether plaintiff may have been disabled, for purposes of the Social Security Act, before that date. For example, if plaintiff had filed his rate increase claim in January 2003[8], or in July 2002, the VA may well have made the rate increase effective as of

---

[8] An electromyogram (EMG) performed in January 2003 showed moderate to severe peripheral neuropathy. Tr. 29.

14 - OPINION & ORDER

either of those dates. Then, the ALJ might have concluded that plaintiff was disabled for the purposes of Social Security as of an earlier time. The point is that the VA's effective date is arbitrary, in the sense that it is tied to the act of filing a claim and is not related to the underlying evidence demonstrating when the claimant's impairments actually became disabling.

Thus here, while the ALJ discusses some of the medical evidence, it is clear from his decision that he relied heavily on the VA's April 10, 2003 disability rate increase effective date to determine plaintiff's disability status under the Social Security Act. Because that date is not reflective of the actual medical evidence, it was error for the ALJ to rely on it.

Moreover, as the Ninth Circuit has held, Social Security Ruling (SSR) 83-20 requires the ALJ to call upon the services of a medical advisor to assess the onset date in cases such as this. SSR 83-20 addresses determinations of onset date in disabilities of non-traumatic origin. SSR 83-20 (located at 1983 WL 31249). In the first instance, the onset determination involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. Id. at *2. "The medical evidence serves as the primary element in the onset determination." Id.

The ruling explains that

> [w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease

15 - OPINION & ORDER

process.

Id.

The regulation further notes that in many cases, precise evidence of onset date will not be available and instead, the ALJ will need to infer an onset date from the available medical evidence. Id. at *3. "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case." Id. Notably, the rule then provides that "[a]t the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred." Id.

The Ninth Circuit has held that the regulation's reference to "'should' means 'must.'" Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998) (citing DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir. 1991)). As explained in DeLorme:  if the "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and obtain all evidence which is available to make the determination." DeLorme, 924 F.2d at 848.  The ALJ erred by not calling a medical advisor to assist in the determination of plaintiff's onset date.

According to the ALJ, prior to April 10, 2003, plaintiff was apparently able to engage in medium exertion work, with the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently, to sit for six hours in an eight-hour workday, and to stand and/or walk for six hours in an eight-hour workday, and then, the very next day, plaintiff's condition deteriorated to the point where he could

16 - OPINION & ORDER

engage in only sedentary work. This scenario is completely inconsistent with the progressive nature of plaintiff's impairments, which more likely than not, produced a more gradual reduction in plaintiff's physical capacities.

## CONCLUSION

The Commissioner's decision is reversed and remanded to the ALJ for the limited purpose of determining, with the assistance of a medical advisor, the appropriate onset date of plaintiff's disabling impairments.

IT IS SO ORDERED.

Dated this __10th__ day of __April__, 2006.


/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

17 - OPINION & ORDER